UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,<br>Plaintiff,<br>v.<br>RYAN ALEXANDER,<br>Defendant. | Case No. 5:18-cr-00349-EJD-1<br><br>**ORDER DENYING DEFENDANT'S MOTION TO DISMISS; DENYING DEFENDANT'S MOTION TO SUPPRESS**<br><br>Re: Dkt. Nos. 23, 25 |

After receiving a tip that Defendant Ryan Alexander uploaded child pornography to the Internet, local and federal law enforcement officers obtained and executed a search warrant, which authorized the officers to search Defendant's home and cell-phones. As officers were preparing to execute the search warrant, they saw Defendant drive away from his home. Officers followed Defendant's vehicle and performed a traffic stop after Defendant failed to come to a full and complete stop at a stop sign as required by California Vehicle Code § 22450. Officers detained Defendant, took custody of him, and ultimately transported him back to his residence for questioning. There, Defendant told officers that there was a box on the top shelf of his garage that might be of interest. It contained incendiary ammunition and a device that appeared to be a homemade silencer.

Defendant argues that his detention violated the Fourth Amendment and that any "fruit" flowing from that detention must be suppressed based on the exclusionary rule. In the alternative, he argues that the indictment must be dismissed because it is unconstitutionally vague. After

Case No.: 5:18-cr-00349-EJD-1
ORDER DENYING DEFENDANT'S MOTION TO DISMISS; DENYING DEFENDANT'S MOTION TO SUPPRESS

1

considering the Parties' papers, having had the benefit of oral argument on January 24, 2020, and having had the benefit of an evidentiary hearing on August 7, 2020, the Court **DENIES** Defendant's motion to dismiss and motion to suppress.

## I. BACKGROUND

### A. Factual Background

The National Center for Missing and Exploited Children ("NCMEC"), a clearinghouse of information about exploited children, operates a "CyberTipline" that the public may use to report Internet related child sexual exploitation. Declaration of David J. Cohen in Support of Mr. Alexander's Motion to Suppress Evidence ("Cohen Decl."), Ex. A at 8, Dkt. 24. NCMEC forwards the Cybertips to the appropriate law enforcement agency for further investigation. *Id.*

The NCMEC forwarded a tip to the Silicon Valley Crimes Against Children Task Force. *Id.* Tumblr reported the Cybertip after it discovered that multiple files uploaded to a user's Tumblr account contained images of suspected child pornography. *Id.* Detective Christian Mendoza, an officer from the San Jose Police Department ("SJPD"), investigated this tip and discovered that a string of images and videos depicting children in different stages of dress were uploaded from two IP addresses to the reported Tumblr account. *Id.* The email associated with the Tumblr account was ▮▮▮▮▮▮ *Id.* Defendant's Instagram username is ▮▮▮▮▮▮ *Id.*, Ex. A at 9.

After obtaining and executing search warrants for information stored by internet service providers and Tumblr, and conducting additional investigation via social media, Detective Mendoza determined that one of the IP addresses belonged to Defendant's wife and that the Tumblr account belonged to Defendant. *Id.* On May 1, 2017, based on Detective Mendoza's investigation, the SJPD obtained a search warrant to search Defendant's residence and cell phones. *Id.*, Ex. A at 1. SJPD was authorized to seize any pornographic images, including any equipment suspected of containing child pornography. SJPD was authorized to search any area that might contain pornography. *Id.* at 1–2.

Case No.: 5:18-cr-00349-EJD-1
ORDER DENYING DEFENDANT'S MOTION TO DISMISS; DENYING DEFENDANT'S MOTION TO SUPPRESS

The search warrant was based on Detective Mendoza's affidavit that there was probable cause to believe that the property described in the warrant was: (1) used to commit a felony; (2) tended to show that a felony was committed; and (3) tended to show that sexual exploitation of a child or possession showing sexual misconduct of a person under 18 years old occurred. *Id.*, Ex. A at 1. The affidavit to the warrant identified Defendant as the likely owner of the Tumblr blog and as someone who likely committed the crimes being investigated. *Id.* at 10.

On May 9, 2017, the SJPD executed the warrant with the assistance of the Bureau of Alcohol, Tobacco, Firearms and Explosives ("ATF") and the Federal Bureau of Investigation ("FBI"). SJPD officers requested assistance from ATF because they had seen videos and photos of Defendant shooting what appeared to be automatic weapons and knew that he owned firearms. *Id.*, Ex. B at 000021. SJPD and the accompanying FBI and ATF agents waited until Defendant left his residence to execute the search warrant. *Id.*, Ex. B at 000021, 000023.

Officers following Defendant stopped Defendant's vehicle after he failed to fully stop at a stop sign, in violation of California Vehicle Code § 22450. *Id.*, Ex. B at 000021. The officers identified Defendant as Ryan Alexander, seized him and then seized his cell phones pursuant to the search warrant. *See* Dkt. 28-3, Ex. 3 at 2–3l; Dkt. 28-4, Ex. 4 at 3. Defendant was handcuffed for around 12 minutes. Thereafter, officers allowed Defendant to sit on the curb with his son. Dkt. 28-3, Ex. 4 at 10. Officers explained that while Defendant was not under arrest, he was being detained pursuant to the search warrant. Dkt. 28-4 at 3, 4, 6, 14.

After Detective Mendoza arrived, he drove Defendant and Defendant's son back to Defendant's residence. Once there, Detective Mendoza placed Defendant in an interview room. Cohen Decl., Ex. B at 000033. Detective Mendoza issued *Miranda* warnings to Defendant and interviewed him while other agents searched the house. Dkt. 28-1, Ex. 1 at 1. The search revealed that Defendant stored firearms, ammunition, and gunpowder. *See e.g.*, Dkt. 24 at 000026. Additionally, Defendant displayed substantial knowledge of firearms and stated that he was familiar with gun laws. Dkt. 28-1, Ex. 1 at 32.

Case No.: 5:18-cr-00349-EJD-1
ORDER DENYING DEFENDANT'S MOTION TO DISMISS; DENYING DEFENDANT'S MOTION TO SUPPRESS

3

1  During the interview, Defendant told officers that there was a box on the top shelf of the garage that contained explosive ammo. Dkt. 28-1, Ex. 1 at 35–36. ATF Special Agent Edward Han opened the box and found what appeared to be a homemade silencer without brand markings or serial numbers and exploding armor piercing incendiary ammunition. Dkt. 24, Ex. B at 000001. The silencer—an 8.5-inch metal cylinder with a .25-inch hole that a bullet can pass through—has threading that allows it to be attached to a firearm. Dkt. 28-2, Ex. 2 at 2. During the initial inspection, the examiner saw grey residue and dented metal inside the silencer, indicating that it had been used. *Id.* The silencer was visually consistent with other homemade silencers the officer had seen. *Id.* ATF's Firearms and Ammunition Technology Branch tested the suspected silencer—tests showed that the silencer reduced the sound of standard ammunition by an average of 24.45 decibels. *Id.* Based on testing and inspection, the examiner concluded the object is within the definition of "firearm silencer" under 18 U.S.C. § 921(a)(24). *Id.*

### B. Procedural History

On August 2, 2018, a Grand Jury charged Defendant with one count of possessing an unregistered firearm silencer, in violation of 26 U.S.C. § 5861(d), and one count of possessing a firearm silencer without a serial number, in violation of 26 U.S.C. § 5861(i). *See* Indictment as to Ryan Alexander, Dkt. 1. Each incorporate 18 U.S.C. § 921(a)(24) into the definition of firearm.

On September 23, 2019, Defendant filed a motion to suppress evidence about the firearm silencer. Mr. Alexander's Motion to Suppress Evidence and Statements ("Mot. to Suppress"), Dkt. 23. On December 16, 2019, the Government filed a response opposing this motion. United States' Opposition to Defendant's Motion to Suppress ("Opp. re Suppress"), Dkt. 28. Defendant filed a reply on January 10, 2020. Defendant Ryan Alexander's Reply to the Government's Opposition ("Reply re Suppress"), Dkt. 30.

On September 23, 2019, Defendant also filed a motion to dismiss the indictment for being unconstitutionally vague. Mr. Alexander's Motion to Dismiss ("Mot. to Dismiss"), Dkt. 25. The Government filed a response opposing the motion on December 16, 2019. United States'

Case No.: 5:18-cr-00349-EJD-1
ORDER DENYING DEFENDANT'S MOTION TO DISMISS; DENYING DEFENDANT'S MOTION TO SUPPRESS

4

1  Opposition to Defendant's Motion to Dismiss ("Opp. re Dismiss"), Dkt. 29.  On January 10, 2020,

2  Defendant filed a reply.  Defendant Ryan Alexander's Reply to the Government's Opposition

3  ("Reply re Dismiss"), Dkt. 31.

**II.  DISCUSSION**

 **A.  Motion to Suppress**

Defendant argues that the Fourth Amendment requires evidence about the silencer, including any statements made about the silencer, to be suppressed because such evidence was derived from an unreasonable seizure.  A brief overview of the events leading up to Defendant's seizure is helpful.  Officers first detained Defendant following a traffic violation.  Officers were following Defendant's vehicle in an attempt to stop him so that other officers could execute the search warrant at Defendant's residence.  Following the traffic detention, officers continued to detain Defendant based on their belief that Defendant had committed a felony.  Officers transported Defendant back to his residence, where the search warrant was being executed.   Once there, Defendant made statements that led officers to seize the silencer.  Defendant argues each detention was unconstitutional; in his view, each detention was made without probable cause.  The Court disagrees.

The Fourth Amendment provides: "The right of the people to be secure in their persons . . . against unreasonable searches and seizures, shall not be violated, and no Warrants shall issue, but upon probable cause . . . particularly describing the place to be searched, and the persons or things to be seized."  Fourth Amendment seizures are generally "reasonable" if they are based on probable cause to believe that the individual has committed a crime.  *Dunaway v. New York*, 442 U.S. 200, 213 (1979).

Officers did not violate the Fourth Amendment when they initially stopped Defendant.  They had probable cause to believe Defendant violated California Vehicle Code § 22450 when he rolled through a stop sign.[1]  *See* Dkt. 28-3, Ex. 3 at 1 ("Affirm, yeah, he just rolled a stop."); Dkt.

---

[1] Defendant requests that the Court hold an evidentiary hearing on the issue of whether or not

Case No.: 5:18-cr-00349-EJD-1
ORDER DENYING DEFENDANT'S MOTION TO DISMISS; DENYING DEFENDANT'S MOTION TO SUPPRESS
5

1    24, Ex. B at 000021 ("I observed the suspect fail to come to a complete stop at the posted sign on

2    Radio Ave at Curtner Ave in San Jose. . . . which I recognized as a violation of California Vehicle

3    Code Section 22450 CVC."); *see also Whren v. United States*, 517 U.S. 806, 810–11 (1996)

4    (holding temporary detention of motorist who the police have probable cause to believe has

5    committed civil traffic violation does not violate the Fourth Amendment, regardless of the

6    officer's subjective intentions). Because this traffic stop was supported by probable cause, the

7    officers constitutionally seized Defendant and ordered him into a public place. *Pennsylvania v.*

8    *Mimms*, 434 U.S. 106, 111 n. 6 (1977) ("[O]nce a motor vehicle has been lawfully detained for a

9    traffic violation, the police officers may order the driver to get out of the vehicle without violating

10   the Fourth Amendment's proscription of unreasonable searches and seizures.").

11          Traffic detentions, however, may not extend indefinitely. *See Rodriguez v. United States*,

12   575 U.S. 348, 354 (2015) (holding that absent reasonable suspicion, police extension of a traffic

13   stop—beyond determining whether to issue a traffic ticket—violates the Fourth Amendment). A

14   traffic stop is unnecessarily long if it extends beyond its "mission" to address the traffic violation

15   that warranted the stop and attend to related safety concerns. *Id.* If the stop is "unnecessarily

16   long," some other justification for detention is necessary.

17          Here, the traffic stop extended beyond the duration of a typical traffic stop. Officers

18   detained Defendant for hours and ultimately transported him back to his home, where he was

19   further questioned. *Cf. id.* at 350, 352 (holding delay of five minutes to wait for drug-sniffing dog

20   after officer had completed "mission" of traffic stop was unreasonable under the Fourth

21   Amendment). The traffic stop alone thus cannot justify Defendant's prolonged detention.

---

Defendant violated California Vehicle Code § 22450. Mot. to Suppress at 11. The Court finds such a hearing unnecessary. The issue is not whether a traffic violation actually happened, but whether the officer had probable cause to believe that such a violation happened. Here, the officer states on the body-cam footage that he saw Defendant roll a stop sign and later writes a report to this effect. The officer thus had probable cause to believe Defendant violated California Vehicle Code. *See Brinegar v. United States*, 338 U.S. 160, 175–76 (1949) ("Probable cause exists where the facts and circumstances . . . [and] (the officers') knowledge . . . (are) sufficient in themselves to warrant a man of reasonable caution in the belief that an offense has been or is being committed." (quotation marks and citation omitted).

Case No.: 5:18-cr-00349-EJD-1
ORDER DENYING DEFENDANT'S MOTION TO DISMISS; DENYING DEFENDANT'S MOTION TO SUPPRESS

6

The Court now resolves the Parties' real contention—was the continued detention of Defendant constitutional?

If a police officer has probable cause to believe that a person has committed a felony, the officer does not need a warrant to arrest the person in public. *United States v. Watson*, 423 U.S. 411, 423 (1976) ("'The usual rule is that a police officer may arrest without warrant one believed by the officer upon reasonable cause to have been guilty of a felony . . . .'" (quoting *Carroll v. United States*, 267 U.S. 132, 156 (1925)); *see also United States v. Bocharnikov*, 2020 WL 4280957, at *5 (9th Cir. July 27, 2020) (Chabbria, J., concurring) (noting that no Fourth Amendment violation occurs if an arrest is made with probable cause). Assessing whether there is probable cause to arrest "depends upon the reasonable conclusion to be drawn from the facts known to the arresting officer at the time of the arrest." *Devenpeck v. Alford*, 543 U.S. 146, 152 (2004). Because an arresting officer's subjective state of mind is irrelevant, arrests may *later* be justified by probable cause. *Id.* at 154. For instance, in *Devenpeck*, the Supreme Court held that even while the defendant was arrested for taping an officer, which is not illegal, if probable cause existed to believe the defendant was impersonating an officer at the time of arrest, the seizure of the defendant was constitutionally valid. *Id.* 154–55.

Here, the only relevant inquiry is whether sufficient probable cause existed to justify Defendant's extended detention. At the time the officers detained Defendant, they had sufficient probable cause to believe Defendant committed a felony. The search warrant specifically stated that there was probable cause to believe that the property described in the warrant was: (1) used to commit a felony; (2) tended to show that Defendant committed a felony; and (3) tended to show that sexual exploitation of a child or possession showing sexual misconduct of a person under 18 years old has occurred or is occurring. Cohen Decl., Ex. A at 1. Indeed, the warrant names Defendant as the alleged perpetrator of the felony. *See id.* (identifying Ryan Alexander by name and Driver's License number). Thus, Defendant's argument that the Government is transforming a "search warrant into an arrest warrant," is flawed. Reply re Suppression at 9. The search

warrant helps form the probable cause needed to detain Defendant because the warrant supports the reasonable belief that Defendant committed a felony. This is especially true because Judge Griffin Bonini, the magistrate judge who issued the search warrant, found that there was probable cause to believe Defendant possessed property used to commit a felony. *See Illinois v. Gates*, 462 U.S. 213, 236 (1983) ("A magistrate's determination of probable cause should be paid great deference by reviewing courts." (quotation marks and citation omitted)). The warrant thus supports the Court's finding that probable cause existed at the time of Defendant's detention.[2] Because probable cause existed, Defendant's continued detention did not violate the Fourth Amendment and the exclusionary rule does not apply.[3]

### 1. Inevitable Discovery

Even assuming that Defendant was detained without probable cause, the Court finds that officers would have inevitably discovered the silencer. Thus, to the extent the exclusionary rule applies at all, it does not provide grounds to exclude the silencer. Rather, it only provides grounds to exclude Defendant's statements about the garage.

The inevitable discovery rule prevents the suppression of illegally obtained evidence "[i]f the prosecution can establish by a preponderance of the evidence that the information ultimately or inevitably would have been discovered by lawful means." *Nix v. Williams*, 467 U.S. 431, 444 (1984). For example, in *Nix*, the record established that a search party was closing in on the

---

[2] It seems clear from the record that while Defendant was not "under arrest" for most of his detention, he also was not free to leave. Thus, for Fourth Amendment purposes, the officers had "seized" Defendant because he was not "free to decline the officers' requests or otherwise terminate the encounter." *See Brendlin v. California*, 551 U.S. 249, 255 (2007). In any event, the rule announced in *Watson*—that an officer may *arrest* a person in public if they have probable cause to believe the person committed a felony—applies equally to seizures. 423 U.S. at 418. Hence, here, the distinction, if any, between "under arrest" and "detained" is irrelevant as Defendant was "seized" within the meaning of the Fourth Amendment.

[3] Defendant spends most of his opening brief discussing the applicability of *Michigan v. Summers*, 452 U.S. 692 (1981) and *Bailey v. United States*, 568 U.S. 186 (2013). Because the Government does not ground the constitutionality of Defendant's detention in the search warrant itself, but rather argues the search warrant provided probable cause to detain Defendant, the Court does not address Defendant's *Michigan v. Summers* or *Bailey v. United States* arguments.

Case No.: 5:18-cr-00349-EJD-1
ORDER DENYING DEFENDANT'S MOTION TO DISMISS; DENYING DEFENDANT'S MOTION TO SUPPRESS

8

location of a body.  Simultaneously, police officers interrogated the defendant in violation *Miranda*.  The defendant disclosed the location of the body.  However, it was probable that the search party would have found the body despite the defendant's testimony, the Supreme Court allowed evidence about the body to be admitted.  The same situation exists here.  The warrant authorized officers to search the entire garage, including containers therein.  When Defendant made his incriminating statements, officers were already in the garage searching.  Officer Han, the agent who found the silencer, testified that he, and two other officers, were searching the garage left to right, top to bottom.  Officer Han also testified that he and the other officers kept searching even after finding contraband.  Officer Han's testimony indicates that the entire garage would have been (and was) searched.

At the evidentiary hearing, Defendant highlighted Officer Han's inability to remember specific details about the search.  This certainly goes to Officer Han's credibility.  The Court, however, is persuaded by Officer Han's testimony, which establishes that: (1) he searched the left-to-center portion of the garage; (2) the silencer was in this section; (3) after finding the silencer, he went back to where he had been searching before, and continued to methodically search his area of the garage; and (4) he would not have stopped searching until his entire garage-portion was completed.  This establishes by a preponderance of the evidence that Officer Han would have inevitably discovered the silencer.  Hence, to the extent the exclusionary rule even applies, it does not present grounds to suppress the silencer.

For these reasons, Defendant's motion to suppress is **DENIED.**

### B. Void for Vagueness

Title 18 U.S.C. § 921(a)(24) provides:

> The terms "firearm silencer" and "firearm muffler" mean any device for silencing, muffling, or diminishing the report of a portable firearm, including any combination of parts, designed or redesigned, and intended for use in assembling or fabricating a firearm silencer or firearm muffler, and any part intended only for use in such assembly or fabrication.

Case No.: 5:18-cr-00349-EJD-1
ORDER DENYING DEFENDANT'S MOTION TO DISMISS; DENYING DEFENDANT'S MOTION TO SUPPRESS

9

1   Defendant argues that this Court must dismiss the indictment because the terms "firearm silencer" and "firearm muffler" are unconstitutionally vague and fail to provide adequate notice about what qualifies as a silencer. Mot. to Dismiss at 2. Defendant contends that because the terms are inadequately defined in the statute, almost any object capable of "silencing, muffling, or diminishing the report of a firearm," like a rag, pillow, towel, newspaper, or blanket, is within the statute's reach. *Id.* at 7. The Government maintains that the statute is constitutional. Opp. re Dismiss at 4, 8–10.

### 1. As-Applied Challenge

Due process requires "that laws give [a] person of ordinary intelligence a reasonable opportunity to know what is prohibited, so that he may act accordingly." *Grayned v. City of Rockford*, 408 U.S. 104, 108 (1972). The doctrine helps guard against arbitrary or discriminatory law enforcement by "insisting that a statute provide standards to govern the actions of police officers, prosecutors, juries, and judges." *Sessions v. Dimaya*, 138 S. Ct. 1204, 1212 (2018).

The Court first considers whether the statute is vague as-applied to the particular facts at issue because "[a] [person] who engages in some conduct that is clearly proscribed cannot complain of vagueness of the law as applied to the conduct of others." *Hoffman Estates v. Flipside, Hoffman Estates, Inc.*, 455 U.S. 489, 495 (1992). Defendant argues that Section 921(a)(24) is so unconstitutionally vague that it fails to provide people fair notice of the conduct it punishes and that the criteria is so standard-less it invites arbitrary enforcement. The Court addresses these contentions in turn.

### a. Fair Notice

"Whether a provision is vague for lack of fair notice is an objective inquiry." *Kashem v. Barr*, 941 F.3d 358, 371 (9th Cir. 2019). The relevant inquiry is whether the law gives "a person of ordinary intelligence fair notice of what is prohibited," not whether the person being prosecuted or held liable under the statute *actually* received a warning that alerted him or her that their behavior was subject to the statute. *United States v. Williams*, 553 U.S. 285, 304 (285). Hence,

the question is whether a reasonable person would have known that Defendant's alleged conduct fell within Section 921(a)(24)'s criteria.

Defendant argues that Section 921(a)(24)'s phrase "any device for silencing, muffling, or diminishing the report of a portable firearm" is vague because it (1) does not inform an ordinary person of average intelligence constitutes a "silencer" and (2) fails to specify the "type" of silencer included within the statute.[4]  Reply re Dismiss at 11.

A statute is not overly vague if an individual "has been given clear notice that a reasonably ascertainable standard of conduct is mandated; it is for him to insure [sic] that his actions do not fall outside the legal limits." *United States v. Powell*, 423 U.S. 87, 92 (1975).  It is clear that the threaded metal cylinder is a device for "silencing, muffling, or diminishing the report of a portable firearm."  Here, Defendant, a gun enthusiast, had fair notice that he possessed an object whose *only* purpose was to silence, muffle, or diminish the sound of a firearm.  A reasonable person in Defendant's position would not have to "guess" whether the silencer found at Defendant's home qualified as a silencer—the metal cylinder's clear function was to silence a gun.[5]  *See Connally v. Gen. Constr. Co.*, 269 U.S. 385, 391 (1926).  ATF's testing confirms this.  According to the ATF report, the metal cylinder had been fired through.  These facts confirm that someone in Defendant's position would know that the metal cylinder found in the garage functioned to

---

[4] This oversimplifies Defendant's argument.  Defendant places this second argument under its "Section 921(a)(24) Does Not Provide Fair Notice of What Actions it Criminalizes" heading.  *See* Reply re Dismiss at 11.  The Court understands Defendant to be making a "fair notice" argument.  In practice, however, this seems more like an "arbitrary enforcement" argument as it goes more towards courts applying inconsistent standards and less towards a defendant not having "notice" that his or her behavior is criminal.

[5] The Government focuses on what Defendant specifically knew about guns, almost as if it is making a *mens rea* argument.  This collapses the objective standard of fair notice into a subjective one.  While the two relate, the standard is not what the particular person knew, but whether, as-applied to the specific factual scenario, a reasonable person of average intelligence in the person's position would be on notice that their conduct was legally prohibited.  *See, e.g.*, *United States v. Kilbride*, 584 F.3d 1240, 1257 (9th Cir. 2009) (holding the defendants as-applied vagueness challenge failed because "it should have been clear" to them that their conduct violated the statute); *Kashem*, 941 F.3d at 373 (holding the defendants as-applied vagueness challenge failed because it was "reasonably clear" to someone in their position that the statute proscribed their conduct).

Case No.: 5:18-cr-00349-EJD-1
ORDER DENYING DEFENDANT'S MOTION TO DISMISS; DENYING DEFENDANT'S MOTION TO SUPPRESS

11

"silence, muffle, or diminish," and thus qualified as a "silencer" within the meaning of Section 921(a)(24).

### b. Arbitrary Enforcement

In the alternative, Defendant argues that Section 921(a)(24) is unconstitutionally vague because it fails to describe with sufficient particularity what a suspect must do in order to violate the statute. Mot. to Dismiss at 5. The void-for-vagueness doctrine "guards against arbitrary or discriminatory law enforcement by insisting that a statute provide standards to govern the actions of police officers, prosecutors, juries, and judges." *Dimaya*, 138 S. Ct. at 1212.

The Court need not assess the validity of Defendant's position that Section 921(a)(24) lacks any standards and allows ad-hoc decision making. As discussed above, this silencer plainly fits within Section 921(a)(24). As the ATF report shows, Defendant's silencer significantly reduced the volume of a portable firearm and was created to do so. Therefore, the Court need not determine the inner and outer bounds of Section 921(a)(24) to see if ad-hoc decision making is possible. Accordingly, Defendant's as-applied void-for-vagueness challenge is **DENIED.**

### 2. Facial Challenge

Having determined Defendant's as-applied challenge fails, this Court must decide whether Defendant may facially challenge Section 921(a)(24). Defendant argues that recent Supreme Court case law supports his facial challenge. The Government disagrees and argues Defendant may only bring an as-applied challenge. The difference between the challenges is significant: if the Court allows Defendant to bring a facial challenge, the Court must ignore the set-of-circumstances and conduct underlying Defendant's indictment and instead categorically assess "how the idealized ordinary case of the crime" might occur. *Kashem*, 941 F.3d at 377.

Traditionally, void-for-vagueness challenges to statutes not threatening First Amendment interests are judged on an as-applied basis.

> Objections to vagueness under the Due Process Clause rest on the lack of notice, and hence may be overcome in any specific case where reasonable persons would know that their conduct is at risk. Vagueness challenges to statutes not threatening First Amendment

Case No.: 5:18-cr-00349-EJD-1
ORDER DENYING DEFENDANT'S MOTION TO DISMISS; DENYING DEFENDANT'S MOTION TO SUPPRESS

12

> interests are examined in light of the facts of the case at hand; *the statute is judged on an as-applied basis.*

*Maynard v. Cartwright*, 486 U.S. 356, 361 (1998) (emphasis added); *see also United States v. Davis*, 139 S. Ct. 2319, 2326 (2019).

Defendant does not argue that the First Amendment applies to this case. Instead, he argues that a facial challenge is appropriate because recent Supreme Court cases allowed litigants to facially challenge "residual clauses." Reply re Dismiss at 8; *see also Johnson v. United States*, 135 S. Ct. 2551, 2557–58 (2015); *Sessions v. Dimaya*, 138 S. Ct. 1204, 1211 (2018). Defendant oversimplifies *Johnson* and *Dimaya*.

The Ninth Circuit recently held in *Kashem* that neither *Johnson* nor *Dimaya* allow courts to "cast aside the longstanding rule that a litigant whose conduct is clearly prohibited by a statute cannot be the one to make a facial vagueness challenge." 941 F.3d at 376. The court first noted that both *Johnson* and *Dimaya* suggested the residual clauses at issue were "plagued by such indeterminacy that they might be vague even as applied to the challengers." *Id.* at 377. The court then stated that the residual clauses at issue in *Johnson* and *Dimaya* were atypical because they did not lend themselves to a traditional as-applied analysis since neither allowed a court to use the circumstances of a case. *Id.* Both residual clauses were thus atypical because they required "the judge to imagine how the idealized ordinary case of the crime [] plays out." *Id.* This presented "exceptional circumstances." *Id.*; *see also Copeland v. Vance*, 893 F.3d 101, 111 n.2 (2d Cir. 2018) ("[I]n certain exceptional circumstances not present here, a criminal statute may be struck down as facially vague even where it has some valid applications.").

This case does not raise exceptional circumstances.[6] Section 921(a)(24) does not require the Court to "imagine how the idealized ordinary case of the crime subsequently plays out."

---

[6] The Court is unpersuaded by Defendant's use of cases like *Papachristou v. City of Jacksonville*, 405 U.S. 156 (1972) to show that a facial vagueness challenge is warranted. That case had First Amendment (freedom of association) implications. *Id.* at 165. Likewise, Defendant relies heavily on *Kolender v. Lawson*, 461 U.S. 352 (1983). This case also had First Amendment (freedom of speech) implications. *See e.g., id.* at 358. These cases are thus unhelpful to Defendant's position that facial vagueness challenges are permissible outside the First Amendment context.

Case No.: 5:18-cr-00349-EJD-1
ORDER DENYING DEFENDANT'S MOTION TO DISMISS; DENYING DEFENDANT'S MOTION TO SUPPRESS

13

*Johnson*, 135 S. Ct. 2257–58.  The Court can, as it did above, use the specific factual circumstances of Defendant's case and need not venture into the hypothetical world outlined in Defendant's briefing.  *See* Mot. re Dismiss at 7 ("[A] variety of everyday objects can be swept up into the Section 921(a)(24)'s definition, and the requirement, including that the objects be registered and affixed with serial numbers.  Does the definition extend to objects such as a rag, a pillow, a towel, a newspaper, or a blanket?").  There is thus no reason to depart from the traditional rule that a person to whom a provision clearly applies cannot raise a facial vagueness challenge.  *See Hoffman Estates*, 455 U.S. at 495.  Because the Court held above that the criteria are not vague as-applied to Defendant, the Court declines to reach Defendant's facial vagueness claims.  Accordingly, Defendant's facial void-for-vagueness challenge is **DENIED.**

### III.    CONCLUSION

For the foregoing reasons, Defendant's motion to suppress and motion to dismiss are **DENIED.**

**IT IS SO ORDERED.**

Dated: August 19, 2020

EDWARD J. DAVILA
United States District Judge

Case No.: 5:18-cr-00349-EJD-1
ORDER DENYING DEFENDANT'S MOTION TO DISMISS; DENYING DEFENDANT'S MOTION TO SUPPRESS

14